IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SEAN W. V.,[1]                                          No. 6:24-cv-02128-YY

      Plaintiff,                                  OPINION AND ORDER

   v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

YOU, Magistrate Judge.

Plaintiff Sean W. V. seeks judicial review of the final decision of the Social Security

Commissioner ("Commissioner") denying his application for Supplemental Security Income

("SSI") under Title XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This

Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §

405(g) and § 1383(c)(3). The Commissioner's decision is REVERSED and REMANDED

for the immediate award of benefits.

**PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on September 14, 2022, alleging a disability

onset date of August 22, 2022. Tr. 11. The Commissioner denied plaintiff's claim initially

on December 7, 2022, and again upon reconsideration on October 3, 2023. Tr. 65–69, 72–

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

75. Plaintiff filed a written request for a hearing on February 28, 2023, and a hearing was held before an administrative law judge on July 8, 2024. Tr. 70–71, 27–47. The ALJ issued a decision, finding plaintiff not disabled within the meaning of the Act. Tr. 11–20. The Appeals Council denied plaintiff's request for review on October 23, 2024. Tr. 1–5. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

2 – OPINION AND ORDER

than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential

inquiry to determine whether a claimant is disabled within the meaning of the Act. 20

C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006)

(discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful

activity since the application date of September 14, 2022. Tr. 13. At step two, the ALJ

determined plaintiff suffered from the following severe impairments: status post lumbar

fracture, status post left femur fracture left knee arthrofibrosis, plantar fasciitis, obesity, and

paranoia not otherwise specified. *Id*. At step three, the ALJ found no impairment met or

equaled the severity of any impairment listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1,

Subpart P, Appendix 1. *Id*. The ALJ found plaintiff has the residual functional capacity

("RFC"):

> to perform light work as defined in 20 C.F.R. § 404.1567(b)
> and 416.967(b) except he can occasionally lift and carry up to
> 20 pounds and frequently lift and carry 10 pounds or less. He
> can sit for six hours of an eight-hour day and stand or walk in
> combination for no more than three hours in an eight-hour day.
> He can push and pull as much as he can lift and carry. The
> claimant can climb ramps and stairs occasionally but must
> avoid ladders, ropes, or scaffolding. The claimant may only
> occasionally stoop, kneel, crouch, or crawl. The ability to
> understand, remember, and carryout instructions is limited
> to performing simple and routine tasks. Using judgment is
> limited to simple work-related decisions. Interaction with
> supervisors, coworkers, and general public can be done
> occasionally. Dealing with changes in the workplace setting
> would again be limited to simple work-related decisions. Time
> off-task, in addition to normal breaks, would be up to 5%
> scattered throughout a normal eight-hour workday.

Tr. 15.

At step four, the ALJ that found plaintiff has no past relevant work. Tr. 19. At step

five, the ALJ found that considering plaintiff's age, education, work experience, and

3 – OPINION AND ORDER

residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including marker, routing clerk, and router. Tr. 20. The ALJ therefore found plaintiff not disabled. *Id*.

## DISCUSSION

Plaintiff argues the ALJ erred by failing to (1) provide clear and convincing reasons supported by substantial evidence to reject his subjective symptom testimony, (2) allow him to cross-examine the vocational expert ("VE") at the administrative hearing, (3) adequately address a conflict between the VE's testimony and Dictionary of Occupational Titles ("DOT"), (4) properly apply Medical-Vocational Rule ("grid rule") 201.09, and (4) incorporate relevant limitations into the RFC. Pl. Br., ECF No. 9, at 4–34. The Commissioner concedes the ALJ erred by failing to allow plaintiff to cross-examine the VE but argues the ALJ did not otherwise err. *See* Def. Br. and Mot. Remand ("Def. Br.") 2–8, ECF 17.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not

4 – OPINION AND ORDER

arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id*. at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

On August 22, 2022, plaintiff was 50 years old and homeless when he was walking across the street in a crosswalk and struck by a pick up truck or a van, causing him to roll over the top of the hood of the vehicle and lose consciousness. Tr. 239, 266, 285. The driver did not have tags on the car or insurance. Tr. 259. Plaintiff suffered a "left zone 1 sacral fracture, right anterior column nondisplaced acetabular fracture and left superior pubic rami fracture minimally displaced," and a "notable transverse process fracture at 12." Tr. 242. The following day, plaintiff underwent orthopedic surgery for intramedullary nailing of the left femur fracture. Tr. 321. His pelvic fractures were managed nonoperatively. Plaintiff was

5 – OPINION AND ORDER

hospitalized for 37 days. Tr. 485.

Plaintiff claims he experiences pain and immobility that prevent him from working. Tr. 189 (Function Report). Plaintiff describes that every aspect of his life has been made more difficult due to his injuries. Plaintiff is unable to stand for lengths of time, he has a gait that limits his stride, and he can engage in only limited physical exertion of his left knee joint to mitigate his pain. His left injured leg hurts when he sleeps on his back and hurts "worse" if he rolls and sleep on his left or right side. He has difficulty pulling socks, pants, and underwear over his feet, and it is difficult and impossible to reach his feet and extremities when he showers. It takes plaintiff two hours to prepare a meal, and he is barely able to make his bed. Cleaning his room takes two and a half hours. He once fell while mopping his room and it was very difficult to get back up. He cannot drive and can no longer ride a bicycle. He has difficulty sitting upright on the side of his bed because he cannot bend his left leg at a 90 degree angle. He can still walk with a walker but not at his previous pace. He can only walk two city blocks before needing to rest. Reaching, bending, and standing put plaintiff in an unstable position.

At his hearing, plaintiff testified that he has issues with his leg from the moment he stands up and he cannot stand for any amount of time before having to move or sit down. He cannot walk on uneven surfaces because he can fall. He cannot stand on his left leg by itself at all, which causes difficulty with stairs and curbs. He can sit six hours out of a normal eight-hour workday but it would bother him. He can carry five to ten pounds of groceries but could not carry a twenty-pound bag of dog food. He does not drive because he has fear regarding reaching the brake pedal and pushing it to slow down. He described being hospitalized for psychiatric illness but could not recall when or where. He had no hobbies

because his time is spent taking care of himself.

The ALJ concluded that plaintiff's subjective symptom testimony is inconsistent with the medical record, observing that plaintiff's swelling had improved, his "range of motion, sensation and circulation were intact," and he declined physical therapy. Tr. 16. But although plaintiff's swelling had improved, the medical record indicates that in August and September of 2023, approximately a year after his surgery, plaintiff still had swelling and tenderness in his left lower extremity, and he complained of continuing left leg pain and weakness. Tr. 721, 811, 849. He also experienced increasing pain in right lower extremity because of overcompensation. Tr. 811. Regarding range of motion, records from September 2023 show that his left knee flexion was painful and abnormal, his left knee extension was abnormal, and his left ankle/foot dorsiflexion was abnormal. Tr. 811.

The ALJ discounted plaintiff's use of a walker, observing that plaintiff "requested a walker and was given one, but no examination findings were listed nor any other support except for [plaintiff's] subjective reports and request." Tr. 16. To the contrary, Dr. Inger Lied conducted a physical exam of plaintiff before prescribing a walker in early September of 2023. Tr. 763-64. Plaintiff was also assessed by Matthew Kirchoff, PT, DPT, in late September of 2023. Tr. 812. Kirchoff conducted "tests and measures" that determined plaintiff had a patient functional score of only 3 for walking without a walker, an abnormal gait, abnormal range of motion in his left need, left ankle/foot, and pain and tenderness in his medial and lateral joint lines. Tr. 811. Plaintiff continued to complain of ongoing weakness and pain in his left leg through the end of 2023, and Dr. Lied increased plaintiff's gabapentin to 300 mg, three times a day. Tr. 760-61. Regarding plaintiff's purported failure to participate in physical therapy, the ALJ's conclusions fail to adequately account for the

7 – OPINION AND ORDER

fact that plaintiff attempted physical therapy in late 2023, but discontinued it due to the pain. Tr. 761, 811.

The ALJ's findings also fail to sufficiently account for plaintiff's psychiatric disorder, which results in paranoia, distrust of medical professionals, and outright hostility, even violence, toward the people who are attempting to treat him.[2] During his hospitalization, plaintiff displayed disorganized thought process and poor topic maintenance, and he was tangential when discussing his recovery and understanding the importance of movement and participating in his therapies. Tr. 351.[3] Plaintiff consistently

---

[2] *See*, *e.g.*, Tr. 51, 346 (when surgeon introduced himself, plaintiff yelled and swore at him, and full physical examination was not performed due to plaintiff's aggression); Tr. 316-17 (exhibited poor ability to reason with limited insight, displayed tangential thoughts that were difficult to follow, was challenging to redirect, and became irritable quickly and often without warning); Tr. 330 (told staff he was homicidal and had an intent to act on it); Tr. 359 (plaintiff had feces all over hospital pads and sheets, but did not want to be cleaned, took a "swipe" at the nurse, threatened to throw a full urinal at the nurse, and said he would punch the nurse if the nurse tried to clean him); Tr. 371 (struck physical therapist in the head when she tried to help him move to wheelchair, resulting in a safety alert and directive that staff should no longer enter his room alone).

[3] *See also* Tr. 298 (plaintiff was "alert but illustrated signs of cognitive impairment throughout session," displayed "poor insight," talked in circles, "frequently contradict[ed] himself," "displayed reduced reasoning," was "not overly receptive to therapist instruction and education," and "perseverate[d] on certain topics"); Tr. 300 (poor insight into recovery/rehabilitation from injuries); Tr. 303 (plaintiff's thought process was incongruent with context); Tr. 311 ("Patient with very concrete but often illogical thoughts and was very difficult to redirect. Patient with poor reasoning and insight." When asked how he was feeling, plaintiff responded that he felt like "a McDonalds bag filled with food," and continued talking in a manner that "nobody understands" such that the writer "could not follow the conversation with him."); Tr. 316 ("Patient largely limited by his own cognitive deficits and unwilling to attempt further mobility despite heavy encouragement."); Tr. 318 ("poor progress" due to plaintiff's refusal to increase his participation in a simple act and "poor insight/safety awareness"); Tr. 319 (cognitive status was "impaired" and he continued to argue about most instructions/cues and was irrational at times); Tr. 324-25 ("Inconsistently follows 1-step commands with multi-modal cues. Inattention present throughout session. Talks in circles and tangential. Emotional lability and paranoia throughout session. Patient reports that his goal was Thanksgiving, without giving any context. . . . Confabulation throughout session, reporting therapist as saying things this

refused to participate in physical therapy, becoming "quite upset, swearing and demanding that therapy never returns." Tr. 350. When told that movement would help prevent blood clots, pneumonia, and deconditioning, plaintiff "perseverated on blood clots stating, 'I don't have a blood clot. It doesn't feel like I have one.'" Tr. 311. Plaintiff had a "consistent record of pain avoidance" and was "under the impression that he need[ed] to do minimal movement in order for healing to occur." Tr. 351, 364 ("He continues to articulate that he needs to 'lie in my bed in order to heal.'"). Plaintiff was "severely apprehensive to any forms of mobility" and had "significant mental health barriers for further rehabilitation from his injuries." Tr. 350. His "underlying mental health and paranoia . . . preclude[d] him from progressing in his care . . . in the hospital as well as discharge planning to skilled nursing facilities." Tr. 350; *see also* Tr. 409 ("His suspicion of medical personnel appeared to be the basis for most of his bizarre remarks. His mumbling, tangential speech, and disorganization appear consistent throughout his hospitalization.").[4] Upon discharge, plaintiff was committed to being wheelchair bound, Tr. 268, and would not return to see his orthopedic surgeon. Tr. 726. Plaintiff refused to engage in a psychiatric evaluation, Tr. 407, and would not take his prescribed Zyprexa because it caused a rash, but no rash was observed. Tr. 415. In sum, even if plaintiff believes, in his mind, that he is more physically impaired than he actually is, the record indicates that he lacks the mental capability to understand his

---

therapist did not say."); Tr. 330 (when asked where he lived, plaintiff responded, "Thanksgiving").

[4] *See also* Tr. 302 (plaintiff would not disclose any friends or social supports when asked); Tr. 351 (when asked where he used to ride his bike, plaintiff responded, "I do not want to tell you").

9 – OPINION AND ORDER

situation any differently or take the necessary action to improve it.[5]

The ALJ also discounted plaintiff's subjective symptom testimony because of purported drug seeking behavior. The ALJ relied on a single, isolated medical visit in January of 2024, during which time plaintiff acted agitated and demanded narcotic pain medication, but then calmed down and understood the plan to continue with gabapentin. The record contains no history of any substance abuse. Tr. 234, 240, 262, 272, 285. Therefore, this isolated incident, which is consistent with plaintiff's poor ability to reason, limited insight into his medical condition, and agitated behavior toward medical personnel, is insufficient to discount his subjective symptom testimony. *See*, *e.g.*, Tr. 317 (observing plaintiff became "irritable quickly and often without warning").

For these reasons, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, to reject plaintiff's subjective symptom testimony.

## II.     Remand

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," . . . but "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016) (quoting *Treichler v. Comm'r of Soc., Sec. Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). Ninth Circuit "case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Id.* (quoting

---

[5] Plaintiff's mental health condition is consistent with his living situation before he was struck by a car and hospitalized. He lived an isolated existence in a trailer with no running water or electricity, bathed in a local stream, did not use public bathroom since COVID, and dug a hole in the ground for toileting. Tr. 285, 297.

10 – OPINION AND ORDER

*Burrell v. Colvin,* 775 F.3d 1133, 1141 (9th Cir. 2014)).

First, the district court must determine that the ALJ "made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (simplified). "In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled." *Id.* (simplified). "Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Id.*

If the district court determines that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether "the ALJ would be required to find the claimant disabled on remand" if the "improperly discredited evidence were credited as true." *Id.* (quoting *Garrison,* 759 F.3d at 1020). "Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits." *Id.* "A district court is generally not required to exercise such discretion, however." *Id.* "District courts retain flexibility in determining the appropriate remedy," and "a reviewing court is not required to credit claimants' allegations regarding

11 – OPINION AND ORDER

the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Id.* (citations omitted). "In particular, [the court] may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (simplified).

Here, as discussed above, the ALJ erred in discrediting plaintiff's subjective symptom testimony. The record has been fully developed and is free of conflicts and ambiguities, all essential factual issues have been resolved, and administrative proceedings would serve no useful purpose. If plaintiff's subjective symptom testimony is credited as true, he would be determined to be disabled. Plaintiff is unable to stand for any amount of time without having to move or sit down, and he spends all of his time taking care of himself. He can barely make his bed, and it takes him two hours to make a meal and two and a half hours to clean his room. Although he can sit for six hours, he has difficulty sitting upright even on the side of his bed because he cannot bend his leg at a 90 degree angle. Over a year after his accident and surgery, he continued to experience pain, and his prescription for gabapentin was increased. Finally, plaintiff's paranoia and mental health condition present significant impediments to his recovery and hinder his ability to improve his condition through means such as physical therapy. *See*, *supra*, p. 8 n.3 (describing plaintiff's impaired mental functioning). The record creates no serious doubt as to whether plaintiff is disabled, and the court exercises its discretion to remand for the immediate award of benefits.[6]

The Commissioner has conceded error in that plaintiff should have been allowed to

---

[6] The Commissioner has conceded an error and moved for remand parties raise other issues,

12 – OPINION AND ORDER

cross-examine the vocational expert at the hearing and moves to remand for further proceedings. Def's Br. and Mot. Remand, ECF 17. Plaintiff also raises other claims of error. Given the court's decision to remand for the immediate award benefits on other grounds, it is unnecessary to reach those issues.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for the immediate award of benefits. The Commissioner's Motion to Remand for Further Proceedings (ECF 17) is denied.

IT IS SO ORDERED.

DATED July 20, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

13 – OPINION AND ORDER